**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin Anthony Altamirano, Jr., | No. CV-15-00169-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| County of Pima, et al., | |
| Defendants. | |

Pending before the Court are Defendant City of Tucson's (the "City") Motion for Clarification (Doc. 171), Rule 42(b) Motion for Separate Trial (Doc. 172), and Motion to Order Reply, Oral Argument, or Both (Doc. 178). Plaintiff Benjamin Altamirano filed a Response to the Motion for Clarification. (Doc. 177.) For the following reasons, the Court will grant in part and deny in part the City's Motion for Clarification, will deny as moot the City's Motion for Separate Trial, and will deny the City's Motion to Order Reply, Oral Argument, or Both.

**I.     Background**

This action arises out of Plaintiff's arrest and year-long confinement on suspicion that he had participated in a home invasion. (Doc. 154 at 1, 3–5.) Plaintiff alleges three counts under 42 U.S.C. § 1983: (1) false arrest and imprisonment; (2) malicious prosecution; and (3) conspiracy. (Doc. 26.) Following the close of discovery, Defendants

Pima County and the City filed Motions for Summary Judgment. (Docs. 123, 125.) In an Order dated July 31, 2019, the Court denied Pima County's Motion for Summary Judgment on all three counts, and granted in part and denied in part the City's Motion for Summary Judgment. (Doc. 154 at 21.) The Court granted the City's Motion for Summary Judgment as to Plaintiff's *Monell* final policymaker theory of liability, finding "no evidence that [Detective Van Norman's statements to the grand jury were] a practice or custom of the City, or that Detective Van Norman had policy making authority for the City." (*Id*. at 17–18.) The Court also granted the City's Motion for Summary Judgment as to Plaintiff's failure-to-train claims. (*Id*. at 20.)

The Court denied the City's Motion for Summary Judgment as to Plaintiff's affirmative policy claims, finding that "[t]here are issues of fact raised as to the existence of each alleged policy." (*Id*. at 19–20.) The Court determined that Plaintiff had produced sufficient evidence to create a question of fact as to the existence of three alleged policies: (1) a policy that denies parents notice or the opportunity to be present at their child's interrogation unless the juvenile specifically requests his parents' presence; (2) a policy to not investigate a juvenile suspect's mental capacity, I.Q., or cognitive disabilities, unless such a disability is obvious; and (3) a policy that prevented juvenile suspects from calling their parents when subject to interrogation ("Affirmative Policies"). (*Id*. at 19.) While the Court's July 31, 2019 Order addressed each of Plaintiff's theories of liability with respect to the City, it did not explicitly decide summary judgment with respect to City on the three claims in Plaintiff's Complaint. (Doc. 26 at 13–15.)[1] In other words, the Court did not explicitly link its decision to deny summary judgment on the affirmative policy theory to the 42 U.S.C. § 1983 violations alleged in the Complaint.

On August 29, 2019, Pima County filed an interlocutory appeal to the Ninth Circuit Court of Appeals of the Court's decision on the issue of Pima County's sovereign immunity. (Doc. 158.) This Court stayed the case as to Pima County pending resolution of that interlocutory appeal. (Doc. 170.) Subsequently, the City filed the two motions that

---

[1] The Court denied summary judgment on all three claims with respect to Pima County. (Doc. 154 at 14-16.)

are the subject of this Order. (Docs. 171, 172.) The Court held a status conference on December 11, 2019. (Doc. 176.) At the status conference, the parties informed the Court that Pima County's appeal had been resolved and all issues in the case as to Pima County had been resolved. (*Id.*) The Ninth Circuit dismissed Pima County's Appeal on January 13, 2020. (Doc. 181.) On January 21, 2020, this Court granted a stipulation (Doc. 182) to dismiss Pima County as a defendant in the above-entitled action. (Doc. 183.) Accordingly, the City is the only remaining defendant in the above-entitled action.

## II. Motion for Separate Trial and Motion to Order Reply, Oral Argument, or Both

The Court will deny as moot the City's Rule 42(b) Motion for Separate Trial, as the City is the only remaining defendant in this action. The Court will also deny the City's Motion to Order Reply, Oral Argument, or Both, as the Court finds that the Motion for Clarification is suitable for decision without oral argument and that neither oral argument nor a reply would assist the Court in its resolution of the Motion.

## III. Motion for Clarification

The City seeks clarification of the Court's July 31, 2019 Order on its Motion for Summary Judgment. (Doc. 171.) The Motion for Clarification seeks clarification as to the portion of the City's Motion for Summary Judgment that was denied. (Doc. 154 at 18–21.) Specifically, the Motion for Clarification requests that the Court make explicit its summary judgment decision with respect to Plaintiff's claims of malicious prosecution and conspiracy. (Doc. 171.)

The Court has reviewed its July 31, 2019 Order on the City's Motion for Summary Judgment, the underlying summary judgment briefing and exhibits, and the parties' briefing on the Motion for Clarification. The Court determines that it failed to link its decision to deny summary judgment on the affirmative policy theory to the legal violations alleged in the Complaint, and that it must now do so in order to clarify which of Plaintiff's claims against the City remain. *See* Fed. R. Civ. P. 56(a).

. . . .

### A. False Arrest and Imprisonment

The City does not seek clarification relating to the false arrest and imprisonment claim. (Doc. 171.) The parties do not dispute, and the Court does not find, that denial of summary judgment as to Plaintiff's affirmative policy theories is inconsistent with denial of summary judgment as to that claim. *See Monell v. Dept of Soc. Serv.*, 436 U.S. 658, 690–91 (1978) (§ 1983 actions against local governments may be brought pursuant to alleged constitutional deprivations based on governmental "custom" even if the alleged practice has not been officially condoned.) The potential existence of the affirmative policies raises questions of law and fact related to the false arrest and imprisonment claim that must be decided by a jury.

### B. Malicious Prosecution

The City seeks clarification on the Court's prior decision relating to the malicious prosecution claim. (Doc. 171.) The City contends that the Court should grant it summary judgment on the malicious prosecution claim because the affirmative policies are unrelated to the prosecution, including the grand jury testimony, against Mr. Altamirano. (*Id.* at 4.) In other words, any actions taken by the City pursuant to the affirmative policies could not support a malicious prosecution claim because the affirmative policies are limited to the City's policies and practices relating to juvenile interrogation. (*Id.* at 2.) Plaintiff opposes the City's Motion on this issue, contending that the City's actions leading up to the prosecution caused the prosecution and therefore the City can be found liable for malicious prosecution. (Doc. 177 at 13–14.)

Plaintiff's argument is unavailing because the Court has already held that the City of Tucson officers in this case, including Detective Van Norman, are not final policymakers able to subject the City to municipal liability. (Doc. 154 at 17.) Holding the City or a City official, in this case Detective Van Norman, liable for a malicious prosecution claim would mandate the inference that Detective Van Norman was somehow responsible for the prosecution against Plaintiff. (*See* Doc. 132 at 11, Doc. 125 at 5–6); *see also Monell v. Dept of Soc. Serv.*, 436 U.S. 658, 690–91 (1978) ("[T]he

touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution[.]").[2] Such a finding would be inconsistent with the Court's decision on the issue of final policymaker liability. (Doc. 154 at 17–18.) It would also be inconsistent with the nature of a prosecution, which begins with the indictment. *Stirone v. United States*, 361 U.S. 212, 215 (1960) (the Fifth Amendment requires that prosecution be begun by indictment). There is no question that the City did not indict Plaintiff. The cases cited by Plaintiff do not allow the Court to reach a different conclusion. *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1122-23 (9th Cir. 2002) (§ 1983 malicious prosecution claim against County and County employee was based on "policies and practices" pursuant to *Monell*). The affirmative policies on which the Court denied summary judgment relate to the City's policies and practices during interrogation of juvenile suspects and are unrelated to the prosecution of a case. Accordingly, the Court clarifies that its July 31, 2019 Order (Doc. 154) granted summary judgment in favor of the City as to Plaintiff's malicious prosecution claim.

### C. Conspiracy

The City also seeks clarification on the Court's prior decision relating to the conspiracy claim. (Doc. 171.) The City contends that the Court should grant it summary judgment on the conspiracy claim because Detective Van Norman was not a final policymaker capable of entering into an agreement with Pima County that would create a conspiracy between the City and Pima County. (*Id.* at 3 –4.) Plaintiff opposes the City's Motion on this issue. (Doc. 177 at 15–16.)

As with the malicious prosecution claim, the Court has already held that the City of Tucson officers in this case, including Detective Van Norman, are not final policymakers able to subject the City to municipal liability. (Doc. 154 at 17.) There is no

---

[2] *Monell* goes on to state that "local governments. . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." 436 U.S. at 691. This rule does not meaningfully expand the City's potential liability as to the malicious prosecution claim because a prosecution cannot be brought pursuant to "custom."

other evidence in support of the conspiracy claim against the City. (Docs. 171 at 4; 177 at 15–16.) Accordingly, the Court clarifies that its July 31, 2019 Order (Doc. 154) granted summary judgment in favor of the City as to Plaintiff's conspiracy claim.

To the extent that the City requests other relief in its Motion for Clarification, that relief is denied.

**IT IS ORDERED** that:

(1) Defendant City of Tucson's Motion for Clarification (Doc. 171) is **granted in part and denied in** part, as follows:

  a) The Motion is **granted** with respect to the City's request for clarification on Plaintiff's malicious prosecution and conspiracy claims. The Court clarifies that its July 31, 2019 Order (Doc. 154) granted summary judgment in favor of the City on Plaintiff's malicious prosecution and conspiracy claims. Plaintiff's malicious prosecution and conspiracy claims against Defendant City of Tucson are accordingly **dismissed**.

  b) The Motion is **denied** with respect to all other requests for relief.

(2) Defendant City of Tucson's Rule 42(b) Motion for Separate Trial (Doc. 172) is **denied as moot**.

(3) Defendant City of Tucson's Motion to Order Reply, Oral Argument, or Both (Doc. 178) is **denied**.

Dated this 6th day of February, 2020.

_____
Honorable Rosemary Márquez
United States District Judge