**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin Anthony Altamirano, Jr., | No. CV-15-00169-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| City of Tucson, et al., | |
| Defendant. | |

A two-week trial in the above-captioned matter is scheduled to begin on January 12, 2021. Currently pending before the Court are five Motions in Limine filed by Defendant City of Tucson. (Docs. 191, 201, 202, 203, 204.)[1] Plaintiff responded to the Motions. (Docs. 195, 208, 209, 211, 212.) Following a Court Order, Defendant replied to Plaintiff's Response to the First Motion in Limine. (Doc. 199.) The Motions will be resolved as follows.

## I.    Background

This action arises out of Plaintiff's arrest and year-long confinement on suspicion that he participated in the Sunland Vista home invasion (the "home invasion"). (*See* Docs.

---

[1] Also pending is Plaintiff's Motion in Limine (Doc. 207) which Defendant opposes only in part (Docs. 213, 214). The Court will address Plaintiff's Motion in Limine in a separate Order.

154, 184.) Plaintiff was a teenager at the time of his incarceration. (*Id.*) The Pima County Prosecutor ultimately dismissed the charges against him. (*Id.*)

Summary judgment as to the City of Tucson was granted in part and denied in part on July 31, 2019.[2] (*See* Doc. 195-1.) In its Summary Judgment Order, the Court denied summary judgment as to the City of Tucson on its "*Monell* affirmative-policy liability," which encompasses Plaintiff's theory of liability regarding the City of Tucson's alleged affirmative policies as to the interrogation of juvenile suspects. (*Id.*; *see also* Doc. 154 at 18-20.) The Summary Judgment Order was the subject of a subsequent Motion for Clarification and an Order providing clarification (the "Clarification Order"). (Doc. 184.) In the Clarification Order, the Court stated that "the potential existence of the affirmative policies [concerning the interrogation of minors] raises questions of law and fact related to [Plaintiff's] false arrest and imprisonment claim that must be decided by a jury." (*Id.*) The Court clarified that it had granted summary judgment as to all of Plaintiff's claims except the false arrest and imprisonment claim. (*Id.*) Accordingly, Plaintiff's false arrest and imprisonment claim is the only claim remaining for trial.

### A. *Monell* Liability

Plaintiff bears the burden of showing that the City of Tucson's allegedly unconstitutional acts subject it to municipal government liability under § 1983 pursuant to the standard set forth by the Supreme Court in *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658 (1978). *Monell* held that a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents," but that it may be liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. Municipal liability cannot be established absent the existence of such a policy or custom. *See Porter v. City of Philadelphia*, No. 18-3105, 2020 WL 5583670, at *11 (3d Cir. Sept. 18, 2020).

---

[2] Defendant Pima County was dismissed with prejudice on January 21, 2020. (Doc. 183.)

A single unconstitutional act by an official policymaker is sufficient to establish *Monell* liability. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233, 1234 (9th Cir. 1989); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."). However, a single incident of unconstitutional action by a non-policymaking employee is not, because there is no respondeat superior liability for municipalities under § 1983. *Davis*, 869 F.2d at 1233-34.

In *City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985), the Supreme Court reversed a jury verdict in favor of the plaintiff on his *Monell* claim. The reversal was based on a jury instruction that "allowed the jury to impose liability on the basis of a single incident"—in that case, a single excessive use of force by a police officer—without additional evidence. *Id*. at 821. The Court found that this "unwarranted inference" "allows a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker" and therefore was inconsistent with *Monell*. *Id*. The *Tuttle* court further stated, "*Monell* must be taken to require proof of a city policy. . . before a claim can be sent to a jury on the theory that a particular violation was caused by the municipal policy. At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *Id.* at 823. Failing to follow this approach "provides a means for circumventing *Monell*'s limitations altogether." *Id*. at 823.

If there is no official policy in place that caused the constitutional violation, plaintiff must show the existence of a "custom" via the existence of a "widespread practice" that is "permanent and well-settled." *Davis*, 869 F.2d at 1235. The existence of such a custom in the present case could be shown by, for example, evidence of other acts by City of Tucson police officers or other cases involving the interrogation of juveniles to show that the use of any one of the three policies pertaining to the interrogation of juvenile suspects is a widespread practice or custom in the city. *See id*.

In setting forth this case law, the Court seeks to clarify a potential misunderstanding regarding what Plaintiff must prove in order to hold the City of Tucson liable for false

arrest and imprisonment. Because Detective Van Norman is indisputably not a final policymaker for the City of Tucson (*see* Doc. 154 at 16-18), his actions alone cannot subject the City to liability for the alleged § 1983 violations. Thus, the only way Plaintiff can establish the City of Tucson's liability for false arrest and imprisonment is to show the existence of an official City policy or a widespread City custom that caused the alleged constitutional violations. Pursuant to the Court's Summary Judgment Order, Plaintiff must establish the existence and application of any one of three affirmative policies related to the interrogation of juvenile suspects. (Doc. 154 at 18-20.)

Plaintiff argues that "there is no rule, regulation, statute, or case law which the City has presented which prevents the Plaintiff from presenting his claim in a framework that he chooses, so long as the presentation is relevant. To show that he was falsely imprisoned, the Plaintiff has chosen to first demonstrate and show the jury that he was indeed innocent." (*See* Doc. 212 at 6.) While true that Plaintiff can choose the order in which he presents admissible evidence, the Court notes that if Plaintiff presents evidence of the alleged constitutional violations without presenting evidence of an official policy or custom that caused them, he will have failed to prove municipal liability for a § 1983 violation under *Monell* and its progeny.

Absent the existence of an official policy that is the "moving force" behind the constitutional violation and that represents "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question," the City of Tucson cannot be found liable for false arrest and imprisonment. Plaintiff must present evidence of a policy or custom, in addition to evidence of a constitutional violation, to prove his claim and avoid having judgment as a matter of law entered against him. *See id*. at 821 ("*Monell* must be taken to require proof of a city policy. . . before a claim can be sent to a jury on the theory that a particular violation was caused by the municipal policy.")

. . . .

. . . .

1

**B. Constitutional Violation**

2      To establish a claim for false arrest and imprisonment under 42 U.S.C. § 1983, a

3  plaintiff must prove that a state actor "acted under color of state law" and "deprived h[im]

4  of rights secured by the Constitution or federal law." *Barry v. Fowler*, 902 F.2d 770, 772

5  (9th Cir. 1990). The Arizona Court of Appeals has defined false arrest as "the detention of

6  a person without his consent and without lawful authority." *Reams v. City of Tucson*, 701

7  P.2d 598, 601 (Ct. App. 1985). "To prevail on his § 1983 claim for false arrest and

8  imprisonment, [a plaintiff must] demonstrate that there was no probable cause to arrest

9  him." *Cabrera v. City of Huntington Pa*rk, 159 F.3d 374, 380 (9th Cir. 1998).

10      Defendant states that it will not defend itself based on probable cause (Doc. 199 at

11  3) and argues that Plaintiff "must not be allowed to force the City into litigating the

12  affirmative defense of probable cause" (Doc. 202 at 4). However, Plaintiff is entitled to

13  show that there was no probable cause for his arrest or imprisonment other than the

14  statements he made during interrogation. Indeed, Plaintiff *must* demonstrate that there was

15  no probable cause to arrest him—including but not limited to no probable cause stemming

16  from the allegedly unconstitutional interrogation—in order to prevail on his claim. *See*

17  *Cabrera*, 159 F.3d at 380. Therefore, Plaintiff is entitled to present evidence that there was

18  no probable cause to arrest and imprison him apart from his statements purportedly made

19  pursuant to the three affirmative policies.

20      The three affirmative policies related to the interrogation of juvenile suspects are:

21  (1) a policy that denies parents notice or the opportunity to be present at their child's

22  interrogation unless the juvenile specifically requests his parents' presence; (2) a policy to

23  not investigate a juvenile suspect's mental capacity, I.Q., or cognitive disabilities, unless

24  such a disability is obvious; and (3) a policy that prevents juvenile suspects from calling

25  their parents when subject to interrogation. (*See* Doc. 154 at 19.) Proof of the existence and

26  application of any one of the three policies is sufficient to establish Defendant's potential

27  liability.[3]

28
_____
[3] The policies concern the interrogation of Plaintiff and his inculpatory statements during
the interrogation (*see* Doc. 195-5), which subsequently led to his imprisonment (Doc. 195

As the Court has repeatedly made clear, first in its Summary Judgment Order and then its Clarification Order, Defendant's potential liability is dependent upon the existence and application of these three alleged affirmative policies. The key issues for trial are (1) whether such policies existed; (2) whether City of Tucson investigators acted pursuant to any of those policies in their interrogation of Plaintiff; (3) whether any such action coerced inculpatory statements, thereby resulting in Plaintiff's false arrest and imprisonment; and (4) the amount of resulting damages, if any. (*See id.*)

## II.    Standard for Admissibility of Evidence

The proponent of evidence bears the burden to establish its admissibility. *United States v. Shah*, 125 F. Supp. 3d 570, 574 (E.D.N.C. 2015). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The test for relevance is "whether 'a reasonable [person] might believe the probability of the truth of the consequential fact to be different [by knowing] the proffered evidence." *United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976) (internal quotation omitted).

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following; unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice means an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Hankey*, 203 F.3d 1160, 1173 (9th Cir. 2000) (internal quotation omitted).

"[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608. "But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness." *Id.*; *see also* Fed. R. Evid. 405. Reputation and opinion evidence are admissible to attack or support a witness's credibility. *Id.*

at 12).

### III.    First Motion in Limine (Doc. 191)

Defendant's First Motion in Limine moves the Court to preclude all evidence "concerning the Tucson Police Department's ('TPD') investigation into the Sunland Vista Home Invasion after detectives interrogated Plaintiff" and "all evidence related to his criminal prosecution" because such evidence does not meet the relevancy standard set forth in Fed. R. Evid. 401, and to the extent that it does, should be excluded based on Fed. R. Evid. 403. (Doc. 191.)

The Motion in Limine contests the admissibility of two categories of Plaintiff's proffered evidence: factual issues and witness testimony. First, it recites the specific factual issues that it argues are not relevant to the remaining legal issues. (*Id*. at 8-11.) Specifically, Defendant contends that Plaintiff is seeking to introduce evidence that (1) is not relevant to the false arrest and imprisonment claim, but instead is relevant only to the dismissed claims for conspiracy and malicious prosecution (*id*. at 8); (2) is not related to any of the three alleged affirmative policies upon which the City of Tucson's potential liability rests (*id*. at 9-10); and (3) is not related whatsoever to the case at hand (*id*. at 10).

Second, Defendant lists the names of specific witnesses whom it argues (1) "have been disclosed to testify about *other* home invasions" (nine witnesses); (2) whose testimony concerns only the dismissed conspiracy and malicious prosecution claims (six witnesses); (3) whose testimony concerns the issue of the right to legal counsel (which Defendant contends is irrelevant) (four witnesses); (4) whose testimony concerns investigation into suspects other than Plaintiff (two witnesses); and (5) whose testimony concerns issues related to the investigation of the Sunland Vista Home invasion and not the interrogation of Plaintiff (28 witnesses). (*Id*. at 12-14.) Defendant further lists the specific witnesses whom it believes would present cumulative testimony (six witnesses total, in two groups of three whom Defendant contends are cumulative) and who are not competent to testify because they lack any independent knowledge of facts at issue (eight witnesses). (*Id*. at 14.)

1    In response, Plaintiff argues that he must be able to show that Plaintiff's "false

2 confession" was the only evidence against him and that "all the other evidence pointed

3 away from him." (Doc. 195.) Plaintiff argues that "[t]he entirety of the investigation is

4 relevant because it demonstrates the absolute lack of probable cause and lack of evidence

5 against the Plaintiff." (*Id*.) Plaintiff states that he "will present evidence that [the] City's

6 affirmative policies resulted in a coerced/false confession, and therefore resulted in his

7 false imprisonment without probable cause for longer than a year." (*Id*.)

8    Plaintiff's Response specifically mentions the names of only five potential

9 witnesses: Dr. Paul Simpson, Mark Hurowitz, William Atchison, Detective Van Norman,

10 and Victoria Otto. (Doc. 195.) Of these, Defendant has not contested the admissibility of

11 the testimony of Dr. Paul Simpson, William Atchison, or Detective Van Norman.[4] (Doc.

12 191.) Accordingly, Plaintiff has directly responded regarding only potential witnesses

13 Mark Hurowitz and Victoria Otto. (Doc. 195.)

14    **A. Witness Testimony of Mark Hurowitz**

15    As to Mark Hurowitz, Plaintiff contends that, after TPD's interrogation of Plaintiff,

16 a victim of the Sunland Home Vista invasion notified Mark Hurowitz, a TPD officer who

17 was not present at the interrogation, that he had seen the suspects of the invasion. (Doc.

18 195 at 6-7.) The victim told Hurowitz that the suspects were back at his residence possibly

19 looking for him; he also said that the suspects had retreated to a residence behind the

20 victim's residence and described the suspects' residence as pink with a Mustang on the

21 side of the house. (*Id*.)[5] Plaintiff alleges that Mark Hurowitz never gave this information

22 to Detective Van Norman and that Detective Van Norman never presented it to the Grand

23 Jury. (*Id*.) Plaintiff argues that "the harm caused by the [infirm] interrogation must be

24 presented" in the context of that information because it "demonstrates why the

25 constitutional infirmity of the interrogation matters." (*Id*. at 7.)

26    

27 [4] Defendant contests the scope of factual issues to which Detective Van Norman should be permitted to testify, but not the overall admissibility of his testimony. (Doc. 191 at 8-10.) The disputed factual issues will be addressed below.

28 [5] Hurowitz testified in his deposition that "[the victim] didn't provide me any details about the people, how many people were there. He didn't describe them." (Doc. 195-7 at 9.)

1    In Reply, Defendant addresses Plaintiff's "context" argument as relevant to Mark
2    Hurowitz. (Doc. 199.) Defendant acknowledges that "some evidence about the Home
3    Invasion and the investigation leading up to Altamirano's interrogation less than twelve
4    hours later is necessary" and argues, in relevant part, that "the crux of this case is whether
5    Altamirano was coerced into making inculpatory statements during his interrogation as a
6    result of the alleged, affirmative policies" and that anything that took place either *outside*
7    the interrogation room or *after* the interrogation cannot possibly be relevant to the question
8    of whether the City of Tucson is liable based on the affirmative policies. (*Id*. at 4-5.)

9    The Court finds the testimony of Mark Hurowitz irrelevant to Plaintiff's claim for
10   false arrest and imprisonment. Plaintiff claims that Defendant lacked probable cause to
11   support the arrest and imprisonment of Plaintiff, including but not limited to a lack of
12   probable cause stemming from the interrogation. However, evidence related to Defendant's
13   possible knowledge of potential suspects other than Plaintiff points not to a lack of probable
14   cause to arrest or imprison Plaintiff, but rather supports a potential finding of probable
15   cause as to suspects other than Plaintiff.[6] Furthermore, Hurowitz's testimony is unrelated
16   to the three affirmative policies, damages, or any other issue. The First Motion in Limine
17   will be granted as to the testimony of Mark Hurowitz.

18   **B.  Witness Testimony of Victoria Otto**

19   Victoria Otto was the Pima County prosecutor who reviewed the case against
20   Plaintiff and ultimately dismissed the charges against him. Plaintiff contends that her
21   testimony is relevant to show that "Plaintiff was likely innocent" and to challenge the
22   credibility of Detective Van Norman. (*Id*. at 14.)

23   In Reply, Defendant addresses Plaintiff's "impeachment" argument, which pertains
24   to Victoria Otto. (Doc. 199.) Defendant argues that Otto's testimony is inadmissible under
25   Fed. R. Evid. 608, which allows a "witness's credibility [to] be attacked" by reputation and
26   opinion testimony and provides that "extrinsic evidence is not admissible to prove specific
27   instances of a witness's conduct in order to attack or support the witness's character for

28   _____

[6] Multiple perpetrators were involved in the home invasion. (*See* Doc. 191-3.)

truthfulness." (*Id.* at 8-9.) Defendant contends that Otto's testimony, or that of any other Pima County prosecutor, is inadmissible because it is extrinsic evidence offered to prove specific instances of conduct, and is not reputation or opinion testimony, which would potentially be admissible under Rule 608. (*Id.*) Likewise, Defendant states that Plaintiff has not disclosed any character witness who will provide reputation or opinion testimony about the character of Detective Van Norman (or any other TPD personnel) and that Detective Van Norman's character for truthfulness is not essential to any claim or defense in this action; therefore, Fed. R. Evid. 405 does not provide a basis for admitting Otto's testimony. (*Id.*)

Otto's testimony is admissible to show that "Plaintiff was likely innocent" because it may support Plaintiff's position that there was no probable cause for his arrest and imprisonment other than the statements he made during the interrogation, and that those statements were also insufficient to support a finding of probable cause. Thus, it is admissible pursuant to Rule 401, and the Court does not find that any of the countervailing Rule 403 factors apply.

However, Otto's testimony is not admissible to attack Detective Van Norman's credibility. Plaintiff has not shown that Otto will provide reputation and opinion testimony regarding Van Norman's character, which would potentially be admissible under Fed. R. Evid. 405 or 608. Plaintiff also has not persuasively demonstrated that Otto's testimony would not amount to "extrinsic evidence" to "prove specific instances" of Van Norman's conduct "in order to attack or support [his] character for truthfulness," which would violate Fed. R. Evid. 608. Van Norman's character is not an essential element of the false arrest and imprisonment claim. Thus, Plaintiff has not shown that Otto's testimony is admissible for the purpose of attacking Van Norman's credibility.

## C. Other Witnesses

The First Motion in Limine contests the admissibility of the testimony of approximately 61 other witnesses whom Plaintiff seeks to introduce at trial. (Doc. 191 at 12-14; *see also* Doc. 187 at 42-50.) Plaintiff has not directly responded regarding any of

these other witnesses and therefore the Court cannot determine the admissibility of their testimony at this time. Accordingly, Plaintiff shall file a Sur-Reply that directly addresses Defendant's arguments regarding the admissibility of witness testimony and that sets forth the specific proposed witness testimony and basis for its admissibility in the Federal Rules of Evidence. The Court will not accept blanket generalizations about the relevance of Plaintiff's proffered witness testimony as a basis for admissibility. The Court further clarifies that any testimony not relevant to proving the remaining factual or legal issues in this case—as delineated in this Order and previous Orders—will be inadmissible at trial.

### D. Factual Issues

Defendant contends that numerous factual issues which Plaintiff has indicated he intends to present at trial are irrelevant to determining Defendant's liability in this action. (Doc. 191 at 8-11.) These issues are set forth in the parties' Joint Proposed Pretrial Order. (Doc. 187.) In Response, Plaintiff contends that nearly everything that happened in the investigation before and after Plaintiff's interrogation is relevant to his case. (*See* Doc. 195.) Plaintiff argues that "the infirmities which occurred during the interrogation have no meaning or context unless the jury is made aware of the entirety of the evidence known to the City [of Tucson] as the interrogation was occurring and after." (Doc. 195 at 5.)

As discussed above in Section I(B), the Court finds that Plaintiff must be allowed to present evidence pertaining to the City of Tucson's investigation of the home invasion in order to show that there was no probable cause to arrest or imprison him.

The parties agree that the factual issue of whether Plaintiff has suffered damages will be in dispute at trial. (Doc. 187 at 4.) The parties also agree that Plaintiff spent approximately one year incarcerated following his arrest for the Sunland Vista home invasion, and Defendant does not dispute the relevancy of this fact. (*Id.* at 28-9.)

Beyond this, Plaintiff seeks to present a total of 25 disputed factual issues at trial:

(1) Whether the Tucson Police Department was aware that there was no probable cause against Plaintiff yet continued to prosecute him.

(2) Whether the Tucson Police Department presented false information to Judge Deborah Bernini when they secured a search warrant for Plaintiff's home.

(3) Whether Detective Van Norman had knowledge that the suspects in the three other Vistas home invasions (Camron Vista, Coconino Vista, South Kramer Vista) did not match Plaintiff, and whether he knew that Plaintiff was eliminated as a DNA contributor in the other home invasions.

(4) Whether Detective Van Norman and Detective Robinson created an environment during Plaintiff's interrogation which caused Plaintiff to falsely confess to being present at the Sunland Vista home invasion.

(5) Whether Detective Van Norman and Detective Robinson kept Plaintiff tied to a table in the interrogation room for more than five hours without food, water, or access to a restroom.

(6) Whether Detective Van Norman and Detective Robinson refused to allow Plaintiff to call his mother during the interrogation, though he asked.

(7) Whether Detective Van Norman and Detective Robinson were aware that a lawyer had come to the location of the interrogation, that the lawyer was requesting access to Plaintiff, and whether the Detectives refused to permit Plaintiff to have access to the lawyer.

(8) Whether Detectives Van Norman or Robinson made any effort to communicate with Plaintiff's mother before, during, or after Plaintiff's interrogation.

(9) Whether the Detectives knew that Plaintiff's description of the events at the Sunland Vista home invasion were inaccurate and not consistent with the facts known to the Detectives.

(10) Whether Detective Van Norman and Detective Robinson disregarded Plaintiff's cognitive disabilities (though Plaintiff informed them), and otherwise suggested answers to Plaintiff regarding what had occurred at the Sunland Vista home invasion.

(11) Whether Detective Jeffrey Van Norman testified falsely before the Grand Jury.

(12) Whether Detective Van Norman withheld exculpatory evidence from the Grand Jury.

(13) Whether Detective Van Norman and other TPD personnel failed to investigate information that the Sunland Vista home invaders were still at large.

(14) Whether Detective Van Norman failed to compare DNA collected at Sunland Vista to the DNA Index System in 2010.

(15) Whether the stolen cell phone was located at Benjamin Altamirano's house.

(16)   Whether the victims at the Sunland Vista address described the assailant called "Gordo" as the assailant who possessed a shotgun. Whether "Gordo" was described as being either 6'0" and 250 lbs., 20 years old and 180 lbs., or 6'0" and 200 lbs.

(17)   Whether Plaintiff was 14 years old, 5'4", and weighed 125 pounds on April 10, 2010.

(18)   Whether any of the Sunland Vista home invasion victims identified Plaintiff as an assailant.

(19)   Whether any other stolen items from the Sunland Vista address were located at Plaintiff's house.

(20)   Whether Plaintiff's house was the only residence searched by TPD personnel in relation to the Sunland Vista home invasion.

(21)   Whether Plaintiff initially claimed no involvement in the Sunland Vista home invasion.

(22)   Whether Plaintiff gave accurate descriptions as to what occurred during the home invasion.

(23)   Whether Plaintiff claimed no involvement at the end of his interrogation.

(24)   Whether Pima County Prosecutor Victoria Otto dismissed the case after Jesse Delaney left the Pima County Attorney's Office, and the case was reassigned.

(25)   Whether Victoria Otto's concerns included the stolen cell phone, which was not located at Plaintiff's house, the margin of error for the GPS signal, and the discrepancies in Plaintiff's alleged confession.

(Doc. 187.)

Defendant argues that issues 1–5, 7, 9, 10 (in part), and 11–25 are irrelevant. (Doc. 191 at 8-10.) Thus, Defendant does not dispute that factual issues 6 and 8, and factual issue 10 to the extent that Plaintiff asserts that Defendant "disregarded the Plaintiff's cognitive disabilities (though Plaintiff informed them)" (*see id*. at 9), are relevant.

Plaintiff's Response does not directly address most of these specific factual issues, but rather argues broadly for their relevance, stating that "the affirmative policies, and constitutional infirmities matter because the Plaintiff's false confession. . . .was the sole evidence against him and directly resulted in his false imprisonment." (Doc. 195 at 2.) Plaintiff cites excerpts from the depositions of Detective Van Norman and Victoria Otto in

1   support of his argument that he should be permitted to introduce evidence of his innocence.

2   (*Id.* at 3-5.)

3       As discussed above, the Court finds that Plaintiff may present evidence of the lack

4   of probable cause supporting his arrest and imprisonment, including, but not limited to, the

5   three affirmative interrogation policies. Accordingly, whether the above-listed factual

6   issues are relevant depends not on their direct connection to the three affirmative policies,

7   as Defendant argues, but on whether they would make it more likely for a jury to find that

8   Plaintiff was falsely arrested and imprisoned. Each of the above-listed factual issues may

9   make it more or less likely that (1) Defendant lacked probable cause to arrest and imprison

10  Plaintiff apart from his inculpatory statements during interrogation; or (2) Defendant

11  lacked probable cause to arrest and imprison Plaintiff based on his inculpatory statements

12  during interrogation. Thus, the Court finds that each of the above-listed factual issues is

13  relevant, except for issues 12 and 13, discussed below.

14      The testimony of grand jury witnesses cannot provide the basis for, or be used as

15  evidence supporting, a § 1983 claim. *Rehberg v. Paulk*, 566 U.S. 356, 374 (2012).

16  Furthermore, "prosecutors have no obligation to disclose substantial exculpatory evidence

17  to a grand jury, even if that evidence impeaches the credibility of a key witness." *United*

18  *States v. Haynes*, 216 F.3d 789, 798 (9th Cir. 2000) (internal quotation and citation

19  omitted). Accordingly, evidence related to factual issues 12 and 13—whether Detective

20  Van Norman testified falsely before the grand jury or withheld exculpatory evidence from

21  the grand jury—will be excluded.

22      The Court finds that factual issue 10, to which Defendant objects in part, is relevant

23  in its entirety. Whether the detectives "disregarded Plaintiff's cognitive abilities" or

24  "otherwise suggested answers to the Plaintiff" is relevant to affirmative policy number (2)

25  ("a policy to not investigate a juvenile suspect's mental capacity, I.Q., or cognitive

26  disabilities, unless such a disability is obvious") because it could make the existence and

27  application of that policy more or less likely.

28  . . . .

1

2

### IV.      Second Motion in Limine (Doc. 201)

Defendant's Second Motion in Limine moves the Court to preclude evidence or argument that Plaintiff made a "false confession." (Doc. 201.) Defendant argues that the truthfulness or falsity of Plaintiff's statements during his interrogation are irrelevant and that it matters only whether the interrogating detectives acted pursuant to any of the three affirmative policies and, in so doing, coerced Plaintiff or overbore his will such that he was falsely arrested and imprisoned. (*Id.*) Defendant cites *Colorado v. Connelly*, 479 U.S. 157, 159, 167 (1986), for its holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment" and argues that it follows that the appropriate inquiry is "whether wrongful officer action overcame a suspect's free will." (*Id.* at 3.) Defendant argues that "the truth or falsity of [Plaintiff's] statements has no bearing on the existence of these alleged policies or whether following them coerced an inculpatory statement." (*Id.*)

In response, Plaintiff argues that the falsity of his confession is relevant because it "was the sole evidence against him and directly resulted in his false imprisonment." (Doc. 208.) Plaintiff argues that "[t]he policies which deprived [him] from access to his parent, an attorney, and which outright disregarded his cognitive limitations directly resulted in his false confession and resulting false imprisonment." (*Id.*)

Whether Plaintiff made false statements during his interrogation is relevant to the issue of whether he was unconstitutionally coerced into confessing in a way that resulted in his false arrest and imprisonment. Indeed, without some evidence or testimony that the confession was, at least in part, false or untruthful, it is unclear how the jury could find that the application of any of the three affirmative policies caused Plaintiff's false arrest and imprisonment. Defendant states that one of the issues for trial (assuming Plaintiff can show liability under *Monell*) is whether detectives' actions during the interrogation of Plaintiff "coerced inculpatory statements, thereby resulting in Plaintiff's false arrest and imprisonment." (*See* Doc. 199 at 2-3.) Without evidence and testimony relating to the

- 15 -

falsity of his confession, it is unclear how Plaintiff can prove either coercion or damages. Thus, the Second Motion in Limine is denied.

## V.    Third Motion in Limine (Doc. 202)

Defendant's Third Motion in Limine moves the Court to preclude evidence or argument of Plaintiff's factual innocence of the Sunland Vista home invasion. (Doc. 202.) Defendant argues that evidence of Plaintiff's factual innocence, or argument directed thereto, should be precluded because (1) it is irrelevant to whether "[Plaintiff's] inculpatory statements were obtained in violation of his constitutional right against self-incrimination" and "because of any of three alleged affirmative City policies related to the interrogation of minors" and (2) even if Plaintiff's factual innocence has some probative value related to the triable issues, that probative value is "substantially outweighed by dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time" because it would result in "unfair prejudice by suggesting to the jury that it should render a verdict out of sympathy for [Plaintiff] because it came to believe he was factually innocent," "wholly apart from his burden to prove that his arrest resulted from an unconstitutional [] City policy." (*Id.*)

In response, Plaintiff argues that his imprisonment "was not based upon evidence of his guilt. The jury must know that. Otherwise, the City will have (and will take) the opportunity to simply declare 'he confessed.'" (Doc. 209.) Plaintiff argues that Defendant "cites no authority for the proposition that the Plaintiff's presentation of exculpatory evidence to the jury should be limited. The entirety of the investigation is relevant because it demonstrates the absolute lack of probable cause and lack of evidence against the Plaintiff." (*Id.*)

As discussed above, Plaintiff may present evidence of the lack of probable cause supporting his arrest and imprisonment, including, but not limited to, the three affirmative interrogation policies. Although Defendant is correct that Plaintiff must show that the application of any one of the three affirmative policies resulted in his false arrest and imprisonment, to do so, Plaintiff must also show that there was no probable cause for his

1    arrest and imprisonment apart from the statements he made during the interrogation.

2    Furthermore, because Plaintiff must show *both* that his arrest and imprisonment resulted

3    from an unconstitutional City policy *and* that there was no other basis for probable cause

4    to arrest and imprison him, the Court does not find that any of the countervailing Rule 403

5    factors apply. Accordingly, Plaintiff may present evidence related to his factual innocence

6    of the home invasion and the Third Motion in Limine is denied.

7           **VI.    Fourth Motion in Limine (Doc. 203)**

8           Defendant's Fourth Motion in Limine moves the Court to preclude evidence that an

9    attorney attempted to visit Plaintiff during his interrogation. (Doc. 203.) Defendant argues,

10   pursuant to *Moran v. Burbine*, 475 U.S. 412 (1986), that the fact that an attorney attempted

11   to speak with Plaintiff during the interrogation is not relevant to whether Plaintiff's

12   statements were coerced by application of any one of the three affirmative policies because

13   none of the three affirmative policies relate to a criminal suspect's right to counsel. (*Id.*)

14   Defendant further argues that, even if Plaintiff's Fifth Amendment right to counsel were

15   relevant, Plaintiff "twice waived that right, reengaging detectives after first engaging his

16   right to counsel" and does not contest the validity of his waiver. (*Id*. at 3-4.) Defendant

17   further argues that such evidence would violate Fed. R. Evid. 403 by causing unfair

18   prejudice to Defendant. (*Id*. at 4.)

19          In response, Plaintiff argues that "if the City prevails, the jury will have no

20   understanding as to why the policies and the constitutional infirmities during the

21   interrogation even matter." (Doc. 211.) Plaintiff cites the Arizona Supreme Court case *In*

22   *re Andre M.*, 88 P.3d 552 (2004) but quotes only portions of that opinion related to the

23   requirement that a juvenile be permitted to have a parent present, not an attorney. (*Id*. at 3-

24   4.) Plaintiff argues that it is "exceedingly relevant" "that Detective Van Norman knew that

25   a lawyer was at the station and that the lawyer wanted access to the minor Plaintiff" but

26   does not address the relevancy standard of Fed. R. Evid. 401.

27          Plaintiff has not shown how or why the denial of the attorney visit is relevant.

28   Specifically, Plaintiff presents no connection between the attempted attorney visit and the

existence of the three alleged affirmative policies, the application of those policies to Plaintiff, or the coercion of Plaintiff via those policies. The alleged policies do not include a juvenile suspect's right to access an attorney. Nor has Plaintiff shown that the denial of the attorney visit is relevant to proving a lack of probable cause for his arrest and imprisonment. Therefore, the Fourth Motion in Limine is granted.

## VII.   Fifth Motion in Limine (Doc. 204)

Defendant's Fifth Motion in Limine moves the Court to preclude evidence related to the search warrant that was executed against Plaintiff. (Doc. 204.) Defendant argues that the search warrant or the results of its execution bear "no reasonable relation" to the issues for trial, specifically "whether officers coerced Altamirano's inculpatory statements in violation of his constitutional right against self-incrimination and, necessarily, because of any of three alleged affirmative City policies related to the interrogation of minors." (*Id.*) Defendant argues that the only possible relevance the search warrant could have had was to the dismissed malicious prosecution claim. (*Id.*) Defendant further argues that, even if the search warrant evidence has some relevancy, it should be precluded because "its minimal probative value is substantially outweighed by dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time." (*Id.*) Defendant argues that Rule 403 should preclude the evidence because it could cause the jury to "decide in favor of [Plaintiff] out of sympathy and wholly apart from proving that his arrest resulted from an unconstitutional, official City policy." (*Id.*) Furthermore, "it would confuse the issues and mislead the jury by shifting the trial away from the existence of alleged City policies, the custodial interview, and damages." (*Id.*)

In response, Plaintiff argues that factual misrepresentations in obtaining the search warrant for Plaintiff's residence, as well as its execution, are admissible and relevant to his claim for false arrest and imprisonment. (Doc. 212.) Plaintiff argues that the search warrant ultimately led to his interrogation and therefore "is a relevant part of the story." (*Id.*) Plaintiff argues that, to support his claim, he "has chosen to first demonstrate and show the jury that he was indeed innocent" and "[t]he misrepresented search warrant application is

part of that narrative structure." (*Id.*) Plaintiff further argues that Detective Van Norman's conduct in securing the search warrant is relevant to show that Van Norman lacks credibility. (*Id.*)

As discussed above, Plaintiff may present evidence of the lack of probable cause supporting his arrest and imprisonment, including, but not limited to, the three affirmative interrogation policies. Although Defendant is correct that Plaintiff must show that the application of any one of the three affirmative policies resulted in his false arrest and imprisonment, to do so, Plaintiff must also show that there was no probable cause for his arrest and imprisonment apart from the statements he made during the interrogation. If execution of the search warrant potentially established probable cause for Plaintiff's arrest and imprisonment, then factual misrepresentations or inaccuracies in the search warrant could make it more likely that the jury would find a lack of probable cause to arrest and imprison Plaintiff apart from his inculpatory statements during interrogation. Therefore, the search warrant evidence is relevant.

The Court does not find that any of the countervailing Rule 403 factors apply to bar this evidence. However, evidence related to the search warrant is not admissible to prove specific instances of Detective Van Norman's conduct in order to attack his character for truthfulness. *See* Fed. R. Evid. 608. Accordingly, Plaintiff may present evidence related to the search warrant, except to attack Detective Van Norman's credibility, and the Fifth Motion in Limine is denied to that extent.

Accordingly,

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

1    **IT IS ORDERED** that Defendant's First Motion in Limine (Doc. 191) is **granted**
2    **in part and denied in part** as follows:

3        (1) The testimony of Mark Hurowitz is **not admissible**.

4        (2) The testimony of Victoria Otto is relevant and **admissible** for the purpose of
5            proving false arrest and imprisonment but is **not admissible** for the purpose of
6            attacking Detective Van Norman's credibility.

7        (3) Plaintiff's factual issues 12 and 13 are **irrelevant**.

8        (4) Plaintiff's factual issues 1–11 and 14–25 are **relevant**.

9        (5) To the extent that Plaintiff challenges Defendant's arguments regarding the
10           admissibility of the remaining witness testimony as set forth in Doc. 191,
11           Plaintiff shall file a Sur-Reply directly addressing those arguments and setting
12           forth the proposed testimony and basis for its admissibility in the Federal Rules
13           of Evidence. The Court will not accept blanket generalizations or arguments
14           contrary to this Order as a basis for admissibility. Plaintiff shall file a Sur-Reply
15           on or before **fourteen (14) days** from the date this order is filed. Defendant may
16           file a Response within **ten (10) days** from the date the Sur-Reply is filed.

17   **IT IS FURTHER ORDERED** that Defendant's remaining Motions in Limine are
18   resolved as follows:

19       (1) Defendant's Second Motion in Limine (Doc. 201) is **denied**.

20       (2) Defendant's Third Motion in Limine (Doc. 202) is **denied**.

21       (3) Defendant's Fourth Motion in Limine (Doc. 203) is **granted**.

22   . . . .
23   . . . .
24   . . . .
25   . . . .
26   . . . .
27   . . . .
28   . . . .

- 20 -

(4) Defendant's Fifth Motion in Limine (Doc. 204) is **denied** except that search warrant evidence may not be used to prove specific instances of Detective Van Norman's conduct in order to attack his credibility.

Dated this 19th day of November, 2020.

Honorable Rosemary Márquez
United States District Judge