**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin Anthony Altamirano, Jr., | No. CV-15-00169-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| City of Tucson, et al., | |
| Defendant. | |

In an Order dated November 20, 2020, the Court ruled in part on Defendant City of Tucson's ("Defendant" or "the City") First Motion in Limine (Doc. 191) and ordered Plaintiff Benjamin Altamirano ("Plaintiff" or "Altamirano") to file a Sur-Reply explaining the basis for the admissibility of testimony of witnesses that was not addressed in Plaintiff's Response to the First Motion in Limine. (*See* Doc. 223.) Plaintiff thereafter filed a Sur-Reply (Doc. 226), and Defendant filed a Response thereto (Doc. 227).

In its Response, Defendant—without waiving any objection and subject to its standing objections raised in Motions in Limine 1 through 5—stipulates to the admissibility of the following witnesses, to the extent their testimony is consistent with the Court's previous Orders:

- Victoria Otto;
- Jack Duke;

1
2
3
4
5
6
7
8

- Andrea Frank/Gemson;
- David Hill;
- Richard Lee;
- Lawrence McDowell;
- Brian Peasley;
- Michelle Shaw;
- Steven Wheeler; and
- Angelina Altamirano.

(Doc. 227 at 13.)[1] The Court finds the testimony of the above witnesses is admissible, subject to any future objections.

The proffered witnesses to whom Defendant objects are discussed herein.[2]

**A. Kevin Krejci**

Plaintiff seeks to present testimony from Kevin Krejci, who was duty counsel when the Plaintiff was initialed in Pima County Superior Court. (Doc. 226 at 2.) The City informed Mr. Krejci that the Plaintiff "used a deadly weapon – a shotgun." (*Id.*, Exh. A, Initial Appearance Sheet, *see also* Doc. 227-1.) Plaintiff argues that Krejci's testimony is admissible because it is relevant to the issue of probable cause. (Doc. 226 at 2.) Specifically, Plaintiff argues that "the City did not have probable cause to arrest the Plaintiff because the City knew that the assailant with the shotgun did not match the Plaintiff's description." (*Id.*) Plaintiff argues that Krejci's testimony will show that the City accused Plaintiff of possessing the shotgun and that the City will be unable to deny that it did so. (*Id.*)

Defendant argues that Krejci's testimony is not relevant. (Doc. 227 at 3.) Defendant argues that the Initial Appearance sheet statement that Altamirano "used a deadly weapon," a "shotgun," is not relevant to his claim for false arrest and

---

[1] Defendant further stipulates to the accuracy of each transcript, without conceding that any transcript is admissible, therefore obviating the need for transcriptionists to testify to the accuracy of transcripts. (*Id.* at 12.)

[2] Plaintiff has attached to his Sur-Reply excerpts of the substance of the testimony he intends to present. (Doc. 226, Exhs. A-Z.) The Court has considered this information in making the findings set forth herein.

- 2 -

imprisonment because it does not make the alleged lack of probable cause to arrest Plaintiff any more or less likely. (*Id.*) Furthermore, the Initial Appearance sheet is not relevant to any of the alleged affirmative policies related to the interrogation of minor suspects. (*Id.*; *see also* Doc. 223.) Defendant argues that, while the Court has already ruled that Plaintiff may introduce admissible evidence about the characteristics of the home invasion assailants, as well as Plaintiff's characteristics, neither Krejci's testimony nor the Initial Appearance sheet would make any facts related to those questions more or less probable. (*Id.*)

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Kevin Krejci's testimony is irrelevant to the factual and legal questions for trial. The alleged fact that "the assailant with the shotgun did not match the Plaintiff's description" is not made any more or less likely by the proffered testimony and evidence showing that the City accused Altamirano of posing "a risk to the community" by committing an offense involving a shotgun. (Doc. 227-1.) Being in possession of a shotgun at the time the home invasion occurred is not a descriptive characteristic of either Plaintiff or the assailants that would tend to either identify them as potential assailants or exonerate them. Rather, the Initial Appearance sheet simply reflects judicial determinations made at Plaintiff's initial appearance in Pima County Superior Court relating to his flight risk and risk to the community. (*Id.*) Thus, the proffered testimony and evidence is not relevant to the issue of whether probable cause existed for Plaintiff's arrest, and therefore is not relevant to the claim for false arrest and imprisonment. Plaintiff does not contend, nor does the Court find, that Krejci's testimony would be relevant to any of the three alleged affirmative policies.

The Court further finds that whatever limited relevance Krejci's testimony and the Initial Appearance sheet may have is outweighed by a danger of confusing the issues and needlessly presenting cumulative evidence pursuant to Rule 403. As discussed herein, Plaintiff has evidence of the assailants' physical descriptive characteristics that is directly connected to the issue of probable cause to arrest Plaintiff. To the extent Krejci's testimony is relevant, it is cumulative of that evidence and it further poses a substantial likelihood of confusing the issues at trial. Accordingly, Kevin Krejci's testimony and the Initial Appearance sheet will be excluded.

**B.  Michelle Romero and Angela G. Altamirano**

Plaintiff seeks to present testimony from his aunt, Michelle Romero, and his sister, Angela Altamirano. (Doc. 226 at 3, 9-10.) Romero and Angela Altamirano will testify that they and Plaintiff's mother "attempted to gain access to the Plaintiff while he was being interrogated" but were "denied access" to Plaintiff by Tucson Police Department ("TPD") officers. (*Id.* at 9-10.) In addition, they will testify that they "and other family members were not permitted to leave their home while the Plaintiff was being interrogated and while their home was being searched." (*Id.*) Plaintiff argues that this testimony is relevant to "to the critical issue of the Plaintiff's interrogation and the absence of a parent during the same." (*Id.*)

Defendant contends that the testimony of Angela Altamirano and Michelle Romero is irrelevant and cumulative. (Doc. 227 at 4.) First, the City argues that the testimony is irrelevant because, based upon *In re Andre M.*, 207 Ariz. 482 (2004), "there is no right for an aunt or sister to be present during the interrogation of a minor." (*Id.*) Therefore, "it is irrelevant whether either one attempted to be present with Altamirano during his interrogation or whether officers denied either one access to him." (*Id.*) Defendant further argues that even if the testimony is relevant, it should be excluded based upon Rule 403 concerns of undue prejudice and cumulative evidence.

The Court finds the testimony of Romero and Angela Altamirano relevant to the issue of Plaintiff's mother's lack of access to the Plaintiff during his interrogation. While

- 4 -

Defendant is correct that the law does not provide a juvenile suspect with a right to access either his aunt or his sister during an interrogation, Plaintiff's aunt and sister were apparently present during and involved with Plaintiff's mother's attempts to gain access to him. Accordingly, their testimony regarding this issue is relevant to the claims involving the alleged affirmative policy regarding a juvenile suspect's access to his parent(s) during interrogation. Likewise, their testimony that they, along with Plaintiff's mother, were not allowed to leave their home during the interrogation is relevant to whether Plaintiff's mother had access to Plaintiff during the interrogation and is therefore relevant to the same affirmative policy. Finally, the Court does not find that any of the countervailing Rule 403 factors outweigh the probative value of the testimony. The testimony of Michelle Romero and Angela Altamirano is relevant and admissible.

### C. Interviewing Police Officers and the Excited Utterance Exception

Plaintiff seeks to introduce the testimony of numerous police officers who responded to the scene of the home invasion and interviewed the victims. (Doc. 226 at 3-7.) Plaintiff seeks to introduce this testimony for the purpose of showing the lack of probable cause for his arrest and his factual innocence of the home invasion. (*Id*. at 13.) Plaintiff argues that the victim interviews are admissible as excited utterances because (1) each interview took place immediately after, or at the longest, within hours of, the home invasion; (2) each interview took place at the crime scene, except for one interview at the hospital (victim Bryan Johnston) and one interview at the Children's Advocacy Center (victim Kayla Jones); and (3) each interview took place close in time to a startling event—a home invasion during which a violent beating and a sexual assault occurred. (*Id*.)

Defendant opposes admission of the testimony of several of the officers. (Doc. 227 at 5.)[3] Defendant contends that the victim's statements, made to the officers during interviews after the home invasion, are hearsay not subject to any exception. (*Id*.) Defendant argues that the victim statements do not qualify as excited utterances because

---

[3] The officer witnesses to whom Defendant has not objected will not be discussed.

(1) no specific "statements" by the victims have been identified; and (2) Plaintiff has failed to show that the victim statements were "spontaneous" and "made with little chance of reflection" due to the fact that he seeks to admit not the statements themselves, but a "sanitized" and "mediated" version of them through the reports of Tucson Police Department ("TPD") officers. (*Id*. at 6.)

### 1. Applicable Law

Plaintiff seeks to admit the victims' statements about the home invasion, especially statements about the physical appearance of the assailants, in order to show that Plaintiff was not present during the crime and therefore there was no probable cause to arrest him. (Doc. 226.) Plaintiff argues that the victims' statements are admissible pursuant to the excited utterance exception. Fed. R. Evid. 803(2).

Hearsay is an out-of-court statement made for the truth of the matter asserted. Fed R. Evid. 801. Hearsay is presumptively inadmissible unless an exception to the rule against hearsay applies. Fed. R. Evid. 802. An excited utterance is "a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803. An excited utterance is not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness. *Id.* "[U]nder appropriate circumstances a hearsay statement may possess circumstantial guarantees of trustworthiness sufficient to justify nonproduction of the declarant in person at the trial even though he may be available." Adv. Comm. Notes to 1972 Proposed Rules. The theory of the excited utterance exception "is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." *Id*. (citing 6 Wigmore § 1747, p. 135). "Spontaneity is the key factor[.]" *Id*. With respect to the amount of time between the startling event and the excited utterance, "the standard of measurement is the duration of the state of excitement . . . the character of the transaction or event will largely determine the significance of the time factor." *Id*. (citing Slough, *Spontaneous Statements and State of Mind*, 46 Iowa L. Rev. 224, 243 (1961);

McCormick § 272, p. 580.) With respect to the nature of the event which underlies the excited utterance exception, "courts seem to look primarily to the effect [of the event] upon the declarant and, if satisfied that the event was such as to cause adequate excitement, the inquiry is ended." *United States v. Napier*, 518 F.2d 316, 318 (9th Cir. 1975) (citing McCormick, Evidence § 297, at 705 (2d ed. 1972)).

For a statement to be admitted as an excited utterance, "[f]irst, there must be some occurrence or event sufficiently startling to render normal reflective thought processes inoperative. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." *People of Territory of Guam v. Cepeda*, 69 F.3d 369, 372 (9th Cir. 1995) (internal quotation and citation omitted). Where the first element is met, the question becomes "whether the statements . . . were the product of stress and excitement, or reflection and possibly fabrication." *Id*. (internal citation omitted).

The Ninth Circuit has rejected the argument that responses to police questioning "must necessarily be the product of reflection and, therefore, the responses" cannot qualify as excited utterances. *Id*. The Ninth Circuit has held that "declarations relating to the circumstances of a violent crime, made by the victim shortly after its occurrence . . . may be admissible although made in response to an inquiry." *Id*. (listing cases). "The fact that a statement is made in response to a question is one factor to weigh in considering the statement's admissibility, but it does not per se bar admission." *Id*. (internal citations omitted). Courts "must also consider various other factors, including timing, age of the declarant, characteristics of the event, and the subject matter of the statements." *Id*. The ultimate question is "whether the statement was the product of stress and excitement or reflective thought." *Id*.; *see also People of the Territory of Guam v. Ignacio*, 10 F.3d 608, 615 (9th Cir. 1993) (finding a child abuse victim's report of a molestation "later that day" admissible under the excited utterance exception because the molestation was "likely extremely traumatic" and "we can assume that the child still would have been under the stress of it.")

### 2. Analysis

The Court finds the proffered witness testimony, including the officers' reports of the victims' statements regarding the home invasion and the assailants, admissible in whole, except for Office Quiroz's testimony, which is admissible only in part. As an initial matter, the police officers' testimony regarding their personal observations in response to the home invasion is relevant and admissible (subject to future objections) because it is relevant to the issue of probable cause for Plaintiff's arrest.[4] (*See* Doc. 223.) Although the victims' statements made to the officers and contained within the officers' reports are hearsay, they are admissible as excited utterances.

The testimony of eight officers is at issue: David Babenko, David Fernandez, Officer Gonzalez-Ramirez, Thomas Hoffman, Natalie Hust Pike, Colin King, John Martinez, and Alex Quiroz. Of these, Babenko, Gonzalez-Ramirez, Hoffman, King, and Martinez (the "responding officers")[5] were present at the scene of the home invasion immediately or shortly after it occurred. (Doc. 226 at 3-6.) Each of the responding officers interviewed at least one victim of the home invasion about his or her experiences during the home invasion. (*Id.*) Plaintiff intends to present testimony from each of the responding officers regarding (1) the victims' descriptions and observations of the physical characteristics, including height, weight, and names of assailants and (2) the victims' descriptions of their experiences of the home invasion and how it occurred. (*Id.* at 3-6.) The victims' experiences included, in part: having their home forcibly entered in the middle of the night, being tied together to a bed with cord, being held and threatened at gunpoint, hearing a gun being fired inside the home, being verbally harassed and threatened, being violently beaten, witnessing a family member being violently beaten, and being sexually assaulted. (*See id.*, Exhs. C-R.)

---

[4] Defendant appears to contest the admissibility of the officers' testimony only to the extent that testimony contains statements made by the victims. (Doc. 227 at 5-11.) It is unclear from the briefing before the Court whether Plaintiff intends to elicit testimony regarding the officers' personal observations of the home invasion, or whether the substance of the officers' testimony will be limited to relaying the victims' statements.

[5] Officer Quiroz was also present at the scene of the crime but will be discussed separately. (Doc. 226 at 7.)

As for the other two officers, Fernandez interviewed victim Bryan Johnston at Kino Hospital on the date of the home invasion, where Johnston was receiving treatment for "major lacerations" to his head sustained during the home invasion. (*Id*. at 4.) Pike was a detective who interviewed victim Kayla Jones, who was sexually assaulted during the home invasion. (*Id*. at 5-6.) Both of these interviews took place on the same day as the home invasion and also concerned the victims' experiences during the crime, including their observations of the assailants. (*Id*. at 4-6.)

Plaintiff submitted multiple police reports with his Reply to the First Motion in Limine. (Doc. 226.) The police reports include: (1) an interview with victim Bryan Johnston while he was at the hospital receiving treatment for "major lacerations" to his head on the day of the home invasion (Doc. 226-5 at 30); (2) an interview with victim Kayla Jones at the scene of the crime shortly after it occurred (Doc. 226-8 at 51-52); (3) an interview with victim Aimee Regnier at the scene of the crime shortly after it occurred, indicating that the officer observed "four females visibly upset" and that Ms. Regnier was "visibly upset" and "cried several times as she gave her statement" (Doc. 226-10 at 68-69); (4) a forensic interview with victim Kayla Jones at the Child Advocacy Center several hours after the crime occurred (Doc. 226-11 at 71); (5) an interview with victims Cassandra Larkin and Aimee Regnier at the scene of the crime (Doc. 226-13 at 96); (6) an interview with Cassandra Larkin at the scene of the crime (Doc. 226-15 at 105); and (7) an interview with Angela Montijo at the scene of the crime, approximately ten minutes after the home invasion (Doc. 226-19 at 127-132).

Defendant argues, in essence, that the victims' statements to the officers should be precluded from the officers' testimony because the statements were the product of reflection and not spontaneous. (Doc. 227 at 7-10.) Defendant argues, for example, that it is "simply unbelievable" that details of the assailants' height and weight "would be spontaneously volunteered as the traumatic event overwhelmed [the victim's] faculties and senses." (*Id*. at 8.) The Court disagrees. A declarant need not be "overwhelmed" by the traumatic event in the moment of her statement for the statement to qualify as an

excited utterance. Rather, the declarant must be "under the stress of excitement" caused by the traumatic event. The Court finds no basis in the record to conclude that the victim-declarants were no longer "under the stress of excitement" caused by the violent invasion into their home in the middle of the night at the time they were responding to officers' questioning. Under the circumstances, the Court finds that all of the victims, especially the victims who were interviewed at the scene of the crime shortly after it occurred, were under the stress of the home invasion when they made statements to the officers who interviewed them.

Additionally, the Court considers the "timing, age of the declarant, characteristics of the event, and the subject matter of the statements." *Cepeda*, 69 F.3d at 372. Having considered these factors, the Court finds that "the characteristics of the startling event" and "the subject matter of the victims' statements" particularly counsel in favor of applying the excited utterance exception. Like the crime victims in *Cepeda*, the victims here were extremely frightened and aroused following their traumatic experience of a violent crime. The home invasion took place inside the victims' home in the middle of the night. This was no mere burglary—the home invasion included a violent beating, kidnapping, a sexual assault, and the discharge of a weapon inside the home. (Doc. 226, Exhs. C-R.) These are experiences that would deeply jar any person. Therefore, the Court does not find that the victims' statements were calculated products of reflection and therefore possibly untrustworthy. This is equally true for the interviews of victims Johnston and Jones[6] that occurred some hours after the home invasion. Jones and Johnston both suffered traumatic physical attacks which were the primary subject of, and reason for, their statements. The "circumstantial guarantees of trustworthiness" necessary to justify an exception to the rule against hearsay are present here.

Alternatively, even if the victims' statements do not qualify as excited utterances, the Court finds that they are not inadmissible as hearsay because they are not necessarily being offered for the truth of the matter asserted therein. The Court finds that the victims'

---

[6] Jones was also interviewed at the scene of the crime. (Doc. 226-8 at 51-52.)

statements are admissible as non-hearsay in order to show the effect they had, or should have had, on the interviewing police officers. The statements may tend to show that the police officers knew, or should have known, that the information regarding the assailants' physical descriptions contained in the statements did not match Plaintiff's characteristics. Thus, the statements are relevant to probable cause even if they are not offered for the truth of the matters asserted therein.

The Court reaches a different conclusion regarding the report and testimony of Officer Quiroz. Officer Quiroz directly interviewed victim Angela Montijo at the scene of the crime, approximately ten minutes after the home invasion. (Doc. 226-19 at 127.) The remainder of Officer Quiroz's report is a summary of information obtained by other officers. (*See id.*) The Court finds Officer Quiroz's report admissible only in part. The report is admissible with respect to the interview of victim Angela Montijo, as well as to the extent that he may testify about his personal observations while investigating the home invasion. The report is inadmissible, however, as to the summary of information obtained by the other officers and the victim statements contained therein. Those statements would constitute hearsay within hearsay and thus are not admissible as excited utterances.

### D. Roger Baldwin

Plaintiff seeks to admit the testimony of Roger Baldwin, who will testify that he collected DNA from the Plaintiff. (Doc. 226, Exh. D.) The DNA collected at the home invasion scene did not match Plaintiff; however, Baldwin will not testify to that fact, but only to the fact of collection of Altamirano's DNA. (*Id.* at 4.) Plaintiff contends that Baldwin's testimony is relevant to the issues of probable cause and Plaintiff's factual innocence. (*Id.*)

Defendant opposes Baldwin's testimony as irrelevant, cumulative, or a waste of time. Fed. R. Evid. 401, 403. Defendant states that it has "never disputed" the fact that Baldwin collected Altamirano's DNA and that "Baldwin cannot testify to whether the DNA matched other samples collected at the scene." (Doc. 227 at 11.) Defendant points

out that Plaintiff intends to present a separate witness, Andrea Frank/Gemson, to testify that Plaintiff's DNA will not match the crime scene. (*See* Doc. 226 at 4.) Defendant has not opposed Frank/Gemson's testimony.

The Court finds Baldwin's testimony irrelevant to the issues of probable cause and factual innocence. Fed. R. Evid. 401. The fact that Baldwin collected DNA samples from the Plaintiff does not help show the alleged lack of probable cause to arrest the Plaintiff. Moreover, the City indicates that it will not dispute that Baldwin collected Plaintiff's DNA. Furthermore, the testimony of Frank/Gemson appears adequate to present the DNA evidence that is relevant to Plaintiff's claim, and further testimony on that issue would be cumulative. *See* Fed. R. Evid. 403. If an issue arises during trial involving the collection of Plaintiff's DNA, then Baldwin's testimony may become admissible. However, based on the record before the Court, it appears that whatever limited relevance Baldwin's testimony has is outweighed by the needless presentation of cumulative evidence and wasting time.

### E.  Doctors Hector F. Barrillas, Angela Barteau, and Eva Maldonado

Plaintiff seeks to admit the testimony of Doctors Hector F. Barrillas, Angela Barteau, and Eva Maldonado. (Doc. 226 at 10.) Dr. Barillas prepared a full psychological evaluation of the Plaintiff on March 16, 2011. (*Id.*, Exh. Y.) Plaintiff contends that Dr. Barillas's testimony related to the psychological evaluation, including Plaintiff's IQ of 49, is relevant to the issue of the Plaintiff's interrogation, including the absence of a parent during the interrogation, the voluntariness of Plaintiff's statements, and Plaintiff's "general suggestibility." (*Id.*) In other words, Plaintiff contends that Dr. Barillas's testimony is relevant to both the issue of probable cause and to at least one of the three alleged affirmative policies relating to the City's interrogation of juvenile suspects.

Drs. Barteau and Maldonado conducted initial psychosocial, WAIS-IV, and PAI scales, which Dr. Simpson used to prepare his evaluation. (*Id.* at 10; *see also* Exh. Z.) Plaintiff contends that the City has not objected to Dr. Simpson's testimony and that Drs.

Barteau and Maldonado's testimony is foundational to that testimony, and therefore relevant. (*Id.*)

Defendant opposes admission of the testimony of Doctors Barrillas, Barteau, and Maldonado because Plaintiff has not disclosed these doctors as expert witnesses and they have not filed reports. (Doc. 227 at 11-12.) Plaintiff has disclosed Doctor Simpson as an expert witness. (*Id.* at 12.)

As an initial matter, the Court finds that the testimony of Doctors Barrillas, Barteau, and Maldonado, as set forth in the Plaintiff's Motion and attached Exhibits, is expert testimony. (Doc. 226, Exhs. Y, Z.) The matters set forth in the medical evaluations, which include clinical evaluations of Plaintiff's intellectual and cognitive functioning, are not within the scope of understanding of lay persons and are based on scientific, technical, or other specialized knowledge that falls within the scope of expert opinions. *See* Fed. R. Evid. 701, 702.

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702. Expert witness testimony must be disclosed during discovery. Fed. R. Civ. P. 26(a)(2). If the expert is "one retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony," the disclosure must be accompanied by a written report containing "(1) a complete statement of the expert's opinions and their bases, (2) the information relied upon by the expert in forming the opinions, (3) all exhibits to be used to summarize or support the opinions, (4) the expert's qualifications and list of publications, (5) a list of cases in which the expert testified, and (6) a statement of the expert's compensation." Fed. R. Civ. P. 26(a)(2)(B).

"Generally, a treating physician is not 'retained or specially employed to provide expert testimony'—a treating physician is a percipient witness of the treatment he rendered—and therefore he is not subject to the written report requirement." *Goodman v.*

*Staples The Office Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011) (citing Fed. R. Civ. P. 26(a)(2) advisory committee's note (1993)). However, "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Id.* Where a plaintiff seeks to have treating physicians render expert testimony beyond the scope of the treatment rendered, those opinions are subject to the expert disclosure requirements. *Id.*

Plaintiff does not argue that Doctors Barrillas, Barteau, and Maldonado were Plaintiff's treating physicians. (Doc. 226 at 10.) Doctors Barrillas, Barteau, and Maldonado each conducted psychological evaluations of Plaintiff, but there is no indication that they were involved in his treatment so as to subject them to the "treating physician" exception to Rule 26(a)(2). (*See id.*, Exhs. Y, Z.) Furthermore, Plaintiff has provided a copy only of Doctor Barrillas's evaluation. (*Id.*, Exh. Y.) Although Plaintiff avers that Doctors Barteau and Maldonado conducted evaluations of Plaintiff that formed the foundation of Doctor Simpson's report (*Id.*, Exh. Z), Barteau's and Maldonado's evaluations are not attached to Plaintiff's filing. Accordingly, the Court has no basis on which to determine whether those evaluations are admissible and finds that they are not. As for Doctor Barrillas's evaluation (Doc. 226, Exh. Y), the Court finds that the evaluation consists of expert testimony that was not properly disclosed pursuant to Rule 26(a)(2). Because Plaintiff has not properly disclosed these witnesses as expert witnesses, their testimony will be excluded.

### F. Correction of Misstatement in Previous Order (Doc. 223)

Defendant's Response (Doc. 227) draws the Court's attention to a misstatement in its previous Order resolving in part Defendant's First Motion In Limine. (Doc. 223.) The Court mistakenly identified factual issues 12 and 13 as inadmissible. (*Id.* at 11.) As Defendant points out (Doc. 227 at 2, n.1), the Order should have stated that factual issues 11 and 12 are excluded. Factual issue 13 is admissible, to the extent that the information does not conflict with any of the Court's other rulings, because such information is relevant to the issue of probable cause for Plaintiff's arrest. (Doc. 223 at 11-14.)

Accordingly,

**IT IS ORDERED** that the admissibility of Plaintiff's proffered witnesses as set forth in Defendant's First Motion in Limine (Doc. 191), Plaintiff's Response (Doc. 195), Plaintiff's Sur-Reply (Doc. 226) and Defendant's Response to Sur-Reply (Doc. 227) is resolved as follows:

(1) The testimony of Kevin Krejci is **inadmissible** and **excluded**.

(2) The testimony of Michelle Romero is **admissible**.

(3) The testimony of Angela G. Altamirano is **admissible**.

(4) The testimony of David Babenko is **admissible**.

(5) The testimony of David Fernandez is **admissible**.

(6) The testimony of Officer Gonzalez-Ramirez is **admissible**.

(7) The testimony of Thomas Hoffman is **admissible**.

(8) The testimony of Natalie Hust Pike is **admissible**.

(9) The testimony of Colin King is **admissible**.

(10) The testimony of John Martinez is **admissible**.

(11) The testimony of Alex Quiroz is **admissible** only to the extent that it includes his interview of victim Angela Montijo and his personal investigation of the home invasion crime scene. It is otherwise **excluded**.

(12) The testimony of Roger Baldwin is **inadmissible** and **excluded**.

(13) The testimony of Dr. Hector F. Barrillas is **inadmissible** and **excluded**.

(14) The testimony of Dr. Angela Barteau is **inadmissible** and **excluded**.

(15) The testimony of Dr. Eva Maldonado is **inadmissible** and **excluded**.

**IT IS FURTHER ORDERED** that the Court's November 20, 2020 Order (Doc. 223) is **amended** to reflect that **factual issues 11 and 12** are **inadmissible**, for the reasons set forth in that Order.

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that the Court's November 30, 2020 Order (Doc. 225) is **modified** with respect to that Order's findings on Motion in Limine 1, as set forth herein.

Dated this 26th day of February, 2021.

_____
Honorable Rosemary Márquez
United States District Judge